# REPORT OF INDEPENDENT INVESTIGATION INTO

# ALLEGED MISCONDUCT OF DAVID FINN, ESQ.

**JUNE 14, 2022**

**MCHAEL P. HEISKELL, ESQ.**

**JOHNSON, VAUGHN & HEISKELL**
**5601 Bridge Street, Suite 220**
**Fort Worth, TX 76112**
**Office: 817-457-2999**
**Facsimile: (817) 496-1102**
**Email: mheiskell@johnson-vaughn-heiskell.com**

## I.   EXECUTIVE SUMMARY

On March 24, 2022, Chief Judge Barbara Lynn  of the Northern District of Texas convened a three judge panel chaired by District Judge David Godbey, and comprised of District Judges Sam Lindsay, and Mark Pittman, "to review various incidents involving the conduct of attorney  David Finn." On April 13, 2022, Judge Godbey issued an Order directing undersigned to investigate the conduct of Mr. David Finn ("Mr. Finn"). The investigative goals are to determine whether disciplinary action is warranted  against Mr. Finn on all or some of the following: (1) conduct unbecoming a member of the bar; (2) failure to comply with a rule or order of the Court; (3) unethical behavior; and (4) inability to conduct litigation properly. See *Local Criminal Rules,* N.D. of Texas, LCrR 57.8(b).

Counsel began his investigation by interviewing, either in person or telephonically, four (4) U.S. District Court Judges (Brown, Scholer, Kinkeade, and Fitzwater) plus Chief Judge Barbara Lynn. Counsel also interviewed three (3) U.S. Magistrate Judges (Tolliver, Ramirez and Horan). Furthermore, counsel interviewed Assistant United State Attorney, Nicole Dana. In addition, counsel also reviewed transcripts of proceedings held  before Chief Judge Lynn and Magistrate Judge Tolliver.  Counsel also reviewed a memo from Kate Marcom of Chief Judge Lynn's office dated March 10, 2022, detailing her phone conversation with Mr. Finn that morning.

As part of this inquiry, counsel also interviewed two (2) Court Security Officers ("CSO") Donald Ray and Cynthia Dunn. Counsel also viewed two videos dated September 23rd and September 24th of 2021, which captured Mr. Finn's conduct involving CSO's Ray and Dunn. Counsel also reviewed three (3) Court Facility Incident Reports provided by Deputy U.S. Marshall Ryan Thompson. Said reports were authored by CSO's Ray, Dunn and Jeff Potter, which summarized the two September 2021 incidents referenced above. In connection with same, there exists a videotape of Mr. Finn's interactions with the CSOs that counsel also reviewed.

On April 25, 2022, counsel received and reviewed a *Motion to Reconsider Order of Suspension of David Finn's Law License in the Northern District of Texas Federal Courts,* together with its

exhibits, as filed by Mr. Finn's counsel, Brett Stalcup. Counsel subsequently received a *Modified Order of Supervision* issued by Chief Judge Lynn on May 11, 2022.

Counsel met and conferred with David Finn and Mr. Stalcup regarding these allegations and his interactions with the above court officials. Mr. Finn admitted his misconduct and expressed remorse for his actions. He also stated that the reasons behind his actions were as a result of his alcoholism, as well as prior family abuse and trauma, for which he has sought, and continues to seek treatment.

This investigation has revealed that David Finn, under the clear and convincing evidence standard, has engaged in and committed misconduct as follows:

Mr. Finn engaged in conduct unbecoming a member of the bar as a result of his actions and statements made to Chief Judge Barbara Lynn, District Judge Ada Brown, and Magistrate Judge Renee Harris Tolliver, coupled with his actions and statements involving CSO's Ray and Dunn. In addition, Mr. Finn failed to comply with a rule or order of the Court as a result of his failure to attend two separately scheduled sentencing hearings held before Chief Judge Lynn. It is also evident that Mr. Finn engaged in unethical behavior as a result of his disrespectful and demeaning comments made to Chief Judge Lynn, District Judge Brown and Magistrate Judge Tolliver. Finally, the culmination of his interactions with the various judges, as outlined above, make it readily apparent that Mr. Finn exhibits the present inability to conduct litigation properly.

## II.   BACKGROUND

David Finn has been licensed as an attorney in the State of Texas since 1991. He is also licensed in each of the U.S. District Courts in Texas, as well as the Fifth Circuit Court of Appeals.[1] As a result, Mr. Finn has an active federal criminal defense practice in the Northern District of Texas.

According to District Judges Sidney Fitzwater and Karen Scholer, on or about June 25, 2020, a three Judge panel consisting of  District Judges Jane Boyle, Sidney Fitzwater, and Karen Scholer convened an informal inquiry into the conduct of Mr. Finn. This occurred approximately two weeks after Mr. Finn appeared before Magistrate Judge Rene Harris Tolliver for a guilty plea hearing. During the hearing, as the  colloquy  between the Court and the defendant developed, Mr. Finn began to interrupt the Court and, after being admonished not to do so, made inappropriate and insulting comments directed at the Court.

Judge Fitzwater stated that three District Judges subsequently met informally for approximately thirty (30) minutes with Mr. Finn and his counsel at the time, Clint Broden, to discuss his conduct not only before Magistrate Tolliver, but also other unidentified court officials. During this meeting, Mr. Finn attempted to distinguish vigorous  advocacy from his alleged conduct and admitted that he suffers from alcohol  abuse which contributed to his actions, and for which he was seeking treatment.  Judge Fitzwater also reported that Mr. Finn volunteered to apologize to Magistrate Judge Tolliver for his actions.

However, on February 25, 2021, during an informal Zoom videoconference  convened by District Judge Ada Brown, Mr. Finn used a curse word in response to a question posed by Judge Brown. He also accused her of being unqualified to act as a Judge. He later proceeded to tell a racially charged joke during said conference.

In late September 2021, Mr. Finn was involved in two separate interactions with CSO's Cynthia Dunn and Donald Ray with both occurring at the 13th Floor magnetometer screening area. On September 23, 2021, the security video clearly shows Mr. Finn inappropriately touching CSO Dunn. CSO Dunn, according to her written report threatened to hit him with her radio unless he stopped. A report by CSO

---

[1] State Bar of Texas, via its website: *www.texasbar.com*

Jeff Potter corroborated Mr. Finn's actions. On the following date, September 24, 2021, at the same location,  security video shows a verbal altercation between Finn and CSO Ray after Ray directs Mr. Finn's client's family out of the secured area.

On March 10, 2022, Mr. Finn failed to appear before Chief Judge Lynn for his client's sentencing hearing. He also subsequently failed to appear on March 22nd for said hearing. On April 5th, at the third setting of the hearing, Mr. Finn finally appears and issues an apology to Chief Judge Lynn.

### III.   INTERACTIONS WITH THE COURTS

a.   *U.S. Magistrate Judge Rene Harris Tolliver*

On June 11, 2020, in the case styled *United States of America v.  John Merzer Price*; Cause No. 3:19-CR-112-K-2, David Finn appeared for the defendant in a guilty plea rearraignment hearing via video conference, as a result of the COVID-19 pandemic restrictions imposed at the time. Prior to going on the record, the recording captured "off the record" conversations between Magistrate Judge Tolliver, the courtroom deputy clerk, the defendant, Mr. Finn and counsel for the Government. These conversations were transcribed, as was the formal hearing. *Attached hereto as Exhibit A is a true and correct copy of the pre-hearing conversations and selected portions of the transcripts of the formal hearing.* During the "off the record" conversations Mr. Finn claimed that there was a confrontation at or near his home with ANTIFA rioters that resulted in his broken shoulder. Later, during the formal hearing he began to interrupt the colloquy between Magistrate Judge Tolliver and the defendant. After being admonished to "watch yourself" by Magistrate Judge Tolliver, Mr. Finn then directs  this identical comment to the court and then immediately claims that he "…got you reversed at the Fifth Circuit." *Exhibit A, Transcript, p. 19.* He then admonished Judge Tolliver to not interfere with him talking with his client. He later proceeded to tell her that he is not to "get bullied" by her. *Exhibit A, Transcript, pp.20-21.* Throughout this exchange, Judge Tolliver sought to determine whether Mr. Finn was "on drugs." He responded  that he was taking Advil due to his pained shoulder. As is evident from the record, the Court sought to

request from Mr. Finn to delay the proceedings due to his actions and the alleged pain he claimed he was under. However, it is clear that Mr. Finn wanted to proceed with said hearing.

Counsel interviewed Magistrate Judge Tolliver in her chambers where she recounted the story of the appearance and actions of Mr. Finn. She opined that it appeared Mr. Finn was under the influence of alcohol or some drug. She stated that she felt totally disrespected by Mr. Finn, and also thought that he was attempting to humiliate her. As of this writing, she has yet to receive an apology from Mr. Finn.

### b.   U.S. Magistrate Judge Irma Ramirez

Counsel interviewed Magistrate Judge Ramirez by telephone regarding her interactions with Mr. Finn. She recalls two dates specifically when there were issues with Mr. Finn—September 23rd and 24th, 2021. Magistrate Judge Ramirez plea docket was on Thursday, September 23rd, and she recalls Mr. Finn being somewhat disruptive while in court that morning. She recalls him making inappropriate comments about her hair, and her being a candidate for appointment as the new U.S. Attorney for the Northern District. During his client's guilty plea colloquy she recalls Mr. Finn speaking about him (Finn) being less than professional with the prosecutor and wanting to apologize. She also recalls that it was apparent that his client had not seen the indictment prior to his plea. Magistrate Judge Ramirez recalls Mr. Finn's appearance as well. She states that his face was puffy and his arm was in a sling. She stated that she wanted to get him out of her courtroom as soon as she could due to his inappropriate behavior. She also stated that on the following day (September 24th), Mr. Finn complained that the Courtroom Security Officers ("CSO") mistreated him.

Magistrate Judge Ramirez provided counsel with the names and contact information of the CSO's who had negative interactions with Mr. Finn.

### c.   U.S. District Judge Ada Brown

On February 25, 2021, in a case styled *United States v. Tremont Blakemore*, Cause No. 3-19-CR-531, Judge Brown convened an informal videoconference to speak to defense counsel, David Finn and government prosecutors, Nicole Dana and Melanie Smith, regarding a trial setting for the case. Due to its informality, no court reporter attended this videoconference. Counsel interviewed Judge Brown to discuss

her recall of the events that transpired during this conference. She recalls that Mr. Finn was clearly

intoxicated. She proceeds to ask him if he is under the influence. She states that Mr. Finn responded,

"That's bullshit." Mr. Finn then proceeds to state that Judge Brown is "not qualified" to preside over this

matter due to her lack of criminal defense experience. He then transitions to wanting to tell a joke. Judge

Brown sought to prevent him from doing so. However, he insists and begins his "joke" by stating that his

daughter attends and runs track at Hockaday School in Dallas. He recalls that at a track meet where she

was competing, he sat next to Emmitt Smith, the former Dallas Cowboy. He proceeds on with the story

that his white daughter "dusted" the black girls and Emmitt Smith commented to him: "Hoo Whee, that

white girl runs as fast as the darkies!" Mr. Finn bursts out in laughter after stating this while everyone else

attending the conference remained silent. Judge Brown recalls trying to provide him an escape route on

this by stating to him that it must have been awkward for him to hear this inappropriate statement.

However, she states that in reply Mr. Finn said: "I thought it was hilarious." Counsel spoke by telephone

with federal prosecutor, Nicole Dana, who confirmed Mr. Finn's use of a swear word and the additional

comments and "joke" by Mr. Finn. Ms. Dana stated that Mr. Finn's comments were inappropriate and left

everyone feeling awkward. Judge Brown, who is African American, stated that she was offended by Mr.

Finn's offensive and disrespectful comments, and his racially charged "joke."

   d.   *Chief U.S. District Judge Barbara Lynn*

   Counsel met with Chief Judge Barbara Lynn in her chambers to discuss her interactions with David

Finn. Chief Judge Lynn proceeded to inform counsel of her Order of Suspension entered on March 25,

2022, suspending Mr. Finn from practicing before courts in the Northern District due to his

nonappearance on two occasions for a sentencing hearing in her court during the month of March, 2022.

She subsequently provided counsel with an e-mail memo from Kate Marcom of her staff detailing her

conversations with Mr. Finn on the morning of March 10, 2022, after he failed to appear. *See Exhibit B*

*attached hereto.* Said memo reflected Mr. Finn's position on the sentencing proceeding by him stating to

Ms. Marcom "…it's no big deal, it's only sentencing…" *Exhibit B, infra.* Mr. Finn then fails to appear for

the subsequent new date of March 25, 2022, for his client's sentencing.  Chief Judge Lynn provided

counsel copies of the transcripts of proceedings in this case held on August 27, 2021, (a status conference) and sentencing hearing transcripts of March 10th and 25th, 2022, and April 5, 2022. *See Exhibits C, D, E and F* attached hereto. Exhibit C, the transcript of the status conference, reveals that Mr. Finn represents to the Court that his reasoning for failure to meet the court's deadlines was due to a "home invasion," and "broke my shoulder, got COVID about six months ago." His first two reasons regarding the alleged "home invasion" and "broke my shoulder" sounds identical to what he represented to Magistrate Judge Tolliver over a year prior to this status hearing.[2] His further comments at said hearing reflect him referring to his client as a "nervous nelly" and a thoughtful "crook." He finally refers to Chief Judge Lynn as a "tough nut."

  e.  *District Judge Karen Scholer*

  Judge Scholer was interviewed by counsel telephonically regarding her observations of and interactions with Mr. Finn. She did recall one small troubling incident that occurred in late 2020 or early 2021 during a videoconference sentencing hearing. She observed Mr. Finn wearing a baseball cap on backwards and with no tie. Judge Scholer instructed her coordinator to talk to Mr. Finn to dispense  with his cap and put on a jacket and tie. After some brief pushback by Mr. Finn, he finally complied. After being noticed of his  issues before other judges. Judge Scholer approved his participation in a reverse proffer session with government prosecutors provided he is accompanied by attorney, Robert Webster, an experienced criminal practitioner.  She understood that Judge David Godbey had also taken similar steps in requiring the presence of Robert Webster with Mr. Finn for a similar session.

  f.  *District Judge Ed Kinkeade*

  Counsel interviewed Judge Kinkeade by phone  who recounted his relationship with Mr. Finn. Judge Kinkeade recognized that Mr. Finn's conduct  before Magistrate Judge Harris in 2020 was a tipping point. However, he relates that he has had no issues with Mr. Finn. He describes how Mr. Finn  has taken ownership of his issues. Judge Kinkeade describes those issues being alcoholism, abuse and family

---

[2]Mr. Finn's statements of ANTIFA at his home and breaking his shoulder to Magistrate Judge Tolliver occurred on June 11, 2020. The status conference before Chief Judge Lynn  occurred on August 27, 2021.

trauma. Judge Kinkeade stated that he is helping Mr. Finn in his spiritual journey. He also describes Mr.

Finn as an active member of his Sunday School class.

g.    *U.S. Magistrate Judge David Horan*

Counsel interviewed Magistrate Judge Horan by phone. He indicated that he has had no issues at all

with Mr. Finn and adds that he has acted appropriately in his court.


## IV.    INTERACTIONS WITH OTHER COURT OFFICIALS

a.    *CSO Cynthia Dunn*

Counsel interviewed CSO Cynthia Dunn on May 11, 2022, to discuss her interactions with  David

Finn. CSO Dunn has been in her position for over 4 ½ years. She was formerly a state trooper in the State

of Maryland for 21 years. She vividly recalls Mr. Finn in the fall of 2021 on the 13th Floor as she worked

the magnetometer screening for security. She reports that after Mr. Finn came through security screening

he proceeds to massage her shoulders as she sat in her chair. He later grabbed her knee. She told him not

to touch her again. When he tried to do it again, she threatened to hit him with her radio.  CSO Dunn tells

that she wrote a report of this incident and that I should request a copy. She also said that video of the

incident may also be available. Counsel subsequently requested and received her report. Counsel also

received the report of CSO Jeff Potter, who witnessed Mr. Finn's actions and was also the recipient of

unwanted touching by Finn. *See Exhibit G and H attached hereto.* CSO Dunn also recalled how Mr. Finn

pretended to swat the backside of a female probation officer as she passed by him.

b.    *CSO Donald Ray*

CSO Ray was interviewed by counsel. CSO Ray has been in his position since 2017 having

previously been in a similar position for 1 ½ years in East St. Louis. He is a 26 year veteran of the St.

Clair County Sheriff's Office. CSO Ray recalls his confrontation with Mr. Finn to have occurred in 2021

during the pandemic when he was on courtroom duty on the 13th floor. He recalls Mr. Finn getting off the

elevator with some family members of his client. CSO Ray had previously been instructed by Courtroom

Deputy Marie Gonzales of Magistrate Judge Ramirez's court that family members could not enter the

courtroom due to the pandemic. However, the family could proceed to the 14th floor to watch the court proceedings on a video feed. When CSO Ray informed Mr. Finn of this, he began to yell: "Do you know who I am? I am a former AUSA and Judge." He also stated: "They are my witnesses and they can come in." CSO Ray said he told him no witnesses are allowed in the courtroom per the judge. As he continued to resist the instructions, CSO Ray told him to leave the floor. Mr. Finn walked around for a while and then confronted CSO Ray and said: "I'm Irish, a boxer, and do I look afraid of you." CSO Ray responded by telling him to, "get out of his face." Mr. Finn backs off. CSO Ray states that he reported this to the courtroom deputy. He also states that he could smell alcohol on Mr. Finn's breath during their confrontation, and that his eyes were bloodshot and his face flushed. CSO Ray wrote an incident report that was received by counsel. *See Exhibit I attached hereto.*

It is to be noted that counsel obtained a copy of the security video of the two incidents described above by the CSOs. The videos corroborate the actions on the part of Mr. Finn on both occasions in the unwanted touching of CSOs Dunn and Potter, the pretend swat of the backside of a female probation officer, and the confrontation with CSO Ray.

### V.   INTERVIEW OF DAVID FINN

Counsel met with Mr. Finn along with his attorney, Bret Stalcup, at Mr. Stalcup's office. After counsel reviewed the various incidents outlined above, Mr. Finn admitted to his actions.[3] Mr. Finn and his counsel provided evidence of Mr. Finn's history of alcoholism, as well as mother's abuse of him. This was proffered as the reason underlying his admitted misconduct outlined above. Mr. Finn has been treated at the following treatment facilities:

- La Hacienda Treatment Center (2017);

- Enterhealth Treatment Center (2019);

---

[3] Mr. Finn did take issue with his alleged joke told to Judge Brown. Mr. Finn recalls that Emmitt Smith, after the race between their two daughters and others, stated to Mr. Finn that he, "must have some mahogany in the woodpile." He denied using the term "darkies." However, he admitted that the joke was inappropriate.

- Presbyterian Hospital's The Haven (March 2022)[4];

- Never Too Late Counseling (April 2022); and

- Arise Recovery  Centers Program (June 2022) *See Exhibit J attached hereto.*

Mr. Finn continues to receive treatment  at Never Too Late Counseling and Arise Recovery Center. Mr. Finn and Mr. Stalcup report that his Eye Movement Desensitization  and Reprocessing (EMDR), therapy and his Intensive Outpatient Program (IOP) are both working well to heal him of his disease and trauma. Mr. Finn reports that he receives individual treatment multiple times a week. Mr. Finn also stated that he  seeks healing primarily for himself, and not to please or pacify the court, or any other person. He states that this is a life or death struggle.

## VI.   CONCLUSIONS

"A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials." *Texas Disciplinary Rules of Professional Conduct; Preamble: A Lawyer's Responsibilities, Para. 4.*

*a.   Conduct Unbecoming a Member of the Bar*

The actions committed by David Finn in this matter support a finding of professional misconduct. The violations  were intentional and objectively unreasonable considering all of the circumstances. Mr. Finn's inappropriate and unwarranted comments to Magistrate Judge Tolliver by threatening her to "watch herself," accusing her of bullying him, and comments of having her reversed on appeal is a clear, unambiguous violation of a professional standard imposed on all counsel. The standard of conduct and obligation of each attorney is to afford respect and decorum to all judicial officers. Likewise, his conduct displayed in his interactions and statements to the CSOs, and the brief interaction  with an unknowing female probation officer lacks the respect they are accorded as well from a member of the bar.

*b.   Failure to Comply with a Rule or Order of the Court*

It is quite evident that Mr. Finn's absence during two separate  sentencing hearings scheduled for his client reflects his failure to comply with the Court's instructions in this regard. His cavalier statement

---

[4] Mr. Finn states that his reason for his absence at the sentencing hearing before Chief Judge Lynn held on  March 22, 2022 was due to his in-patient admission and treatment at The Haven.

to Chief Judge Lynn's court official, Kate Marcom, that "it's no big deal; it's only a sentencing" reflects his attempt to trivialize the judicial proceeding.

    c.   *Unethical Behavior*

        The egregious words spoken by Mr. Finn to Judge Ada Brown coupled with the racially charged "joke" he offered up is certainly unethical and abhorrent. He intentionally sought to make Judge Brown and opposing counsel uncomfortable by his statements impugning her abilities, and the alleged "joke." Mr. Finn's comments to Magistrate Judge Tolliver also fall into the category of unethical conduct with his allegation that he had her reversed on appeal at the Fifth Circuit. Mr. Finn's comments to Chief Judge Lynn accusing his client , on the record, of being a thoughtful "crook" is unethical.  For him to demean his client before the presiding judge and prosecutor is harmful and insulting to his client.

    d.   *Inability to Conduct Litigation Properly*

        The culmination of Mr. Finn's statements and actions before the respective judges, as outlined above, provides clear and convincing evidence that he not only committed misconduct, but that he also demonstrates his present inability to conduct litigation properly.

    e.   *David Finn's Admissions*

        As stated above, Mr. Finn,  in the presence of his counsel, admitted his transgressions before the respective court officials. He stated that he aspires to continue his federal practice in the Northern District of Texas, understanding that he has to demonstrate his capability of continuing to do so as a result of his steadfast adherence to his treatment protocols. His counsel intends to offer a plan to ensure his strict compliance with  same so that Mr. Finn can continue his livelihood.

                                Respectfully submitted,

                                /s/Michael P. Heiskell
                                Michael P.  Heiskell
                                State Bar No.  09383700
                                5601 Bridge Street, Suite 220
                                Fort Worth, Texas 76112
                                (817) 457-2999
                                (817) 496-1102 facsimile
                                E-mail: mheiskell@johnson-vaughn-heiskell.com or
                                firm@johnson-vaughn-heiskell.com

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on June 14 2022, the foregoing document  was submitted via e-mail to Judge Godbey, judge_godbey@txnd.uscourts.gov and to David Finn's counsel, Bret Stalcup, bstalcup@stalcuplaw.com.

/s/Michael P. Heiskell\
Michael P. Heiskell

# EXHIBIT A

```
 1          COURTROOM DEPUTY CLERK:  Hey, Mr. Finn, you need to
 2    unmute yourself.
 3          (Pause)
 4          THE DEFENDANT:  I'm sorry about that.  My name is
 5    John Mervyn Price.
 6          COURTROOM DEPUTY CLERK:  Okay.  We need -- you need
 7    to unmute your video now, okay?
 8          UNIDENTIFIED SPEAKER:  Let's see.  I thought it was.
 9          COURTROOM DEPUTY CLERK:  Hey, David, you need to
10    unmute your -- there we go.
11          And, David, you need to unmute your phone, the bottom
12    of the screen to the left.
13          MR. FINN:  Got it.  Is that good now?
14          COURTROOM DEPUTY CLERK:  Yes, sir.  We're good to go.
15    I will get Judge Toliver on, okay?
16          MR. FINN:  Great.
17          (Pause)
18          MR. FINN:  I've got a Roger Staubach jersey on.
19          MS. WALTERS:  (Laughter)
20          MR. FINN:  Let me see if I can get that.
21          MS. WALTERS:  (Laughter)
22          So are you in the same location as your client, or
23    are you in a different location?
24          MR. FINN:  No, I'm -- Judge, I'm at home.  I broke my
25    shoulder.  I had some ANTIFA rioters down the street in Lake
```

1   Highlands from the Dallas Police Department substation decided

2   they wanted to get in my house, so we got it on.  But I broke

3   my shoulder, so I am in extreme pain right now.

4         But I'm going to the Carrell Clinic, which is

5   awesome.  And, you know, they're phenomenal people.  And I'm

6   hoping to avoid surgery, but, you know, I'm in a lot of pain

7   right now.

8         MS. WALTERS:  Yeah.

9         MR. FINN:  I just went out and bought -- I just went

10  out and bought a tactical shotgun with buckshot in it.  I

11  can't -- I can't fire it, but I'm friends with the gun owner

12  who runs a range and a gun shop, and he took one shot at that

13  target from 15 feet and it just blew it off the planet.  So if

14  they come back, I'm ready.

15        COURTROOM DEPUTY CLERK:  How are you doing?

16        MS. WALTERS:  Oh, I'm doing okay.

17        I actually -- go ahead.

18        MR. FINN:  My youngest is class president at

19  Hockaday, sophomore, and she just got offered by Wake Forest

20  and LSU --

21        COURTROOM DEPUTY CLERK:  Judge, you need to unmute.

22        MR. FINN:  -- this week --

23        Oh, I'm sorry.  Go ahead.  I'm listening.

24        THE COURT:  That's okay.  Are y'all ready?

25        MR. FINN:  Hey, Judge, how are you?

```
 1                THE COURT:  I'm fine.  Are you-all ready?

 2                MR. FINN:  I swear.

 3                MS. WALTERS:  Thanks, Judge.  The Government is

 4     ready.

 5                UNIDENTIFIED SPEAKER:  Thanks, Judge.

 6                MR. FINN:  Less than great.

 7                THE COURT:  Are you on the beach, Mr. Finn?  You look

 8     like the only one of us who didn't dress up for this occasion.

 9     (Laughter)

10                MR. FINN:  Judge, I had these ANTIFA people try to

11     break into my house, and we got into a big ol' war, and I broke

12     my shoulder like a week ago.

13                THE COURT:  Ooh.

14                MR. FINN:  I live right down the street from Lake

15     Highlands police substation.

16                THE COURT:  Oh.

17                MR. FINN:  It spilled -- it spilled over, and they

18     decided they wanted to get it on.  And so I broke my shoulder,

19     and I'm in an extreme amount of pain right now, to be honest

20     with you.

21                THE COURT:  Ooh.  Well, we'll try to get through this

22     as quickly as possible.

23                Did you have to have surgery?

24                MR. FINN:  I'm going to the Carrell Clinic, the same

25     guy that did the Tony Romo shoulder.  And he's really, really
```

1   good.  Yale undergrad, Northwestern Medical School, Columbia,

2   blah, blah, blah.

3        I just took my second x-ray yesterday, and the jury

4   is out, as they say, but if it -- if it doesn't heal or get

5   better in a week, I'll go under the knife, but he's hopeful

6   that I'm not going to have to do that.

7        THE COURT:  Well, I hope everything works out well.

8        MR. FINN:  Thanks, Judge.

9        THE COURT:  Court calls Case Number 3:19-CR-112-K,

10  United States of America versus John Mervyn Price.

11        (The rearraignment hearing followed)

12

13

14

15

16

17

18

19

20

21

22

23

24

25



```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE NORTHERN DISTRICT OF TEXAS

 3                      DALLAS DIVISION

 4
    UNITED STATES OF AMERICA,    )      3:19-CR-112-K-2
 5               Government,      )
                                 )
 6                               )
    VS.                          )      DALLAS, TEXAS
 7                               )
                                 )
 8  JOHN MERVYN PRICE,           )
                 Defendant.      )      June 11, 2020
 9

10

11    TRANSCRIPT OF VIDEOCONFERENCE REARRAIGNMENT HEARING

12        BEFORE THE HONORABLE RENEE HARRIS TOLIVER

13             UNITED STATES MAGISTRATE JUDGE

14
    A P P E A R A N C E S:
15

16

17  FOR THE GOVERNMENT:        MS. MARY F. WALTERS
                               UNITED STATES DEPARTMENT OF JUSTICE
18                             NORTHERN DISTRICT OF TEXAS
                               U.S. Courthouse, Third Floor
19                             1100 Commerce Street
                               Dallas, Texas  75242
20                             mary.walters@usdoj.gov
                               (214) 659-8685
21

22

23

24

25
```

Todd Anderson, RMR, CRR      (214) 753-2170

```
1   FOR THE DEFENDANT:              MR. DAVID M. FINN
                                    Milner Finn Price
2                                   2828 North Harwood
                                    Suite 1950
3                                   Dallas, Texas   75201
                                    Rebecca@milnerfinn.com
4                                   (214) 651-1121

5

6

7

8

9

10

11

12

13

14

15

16

17

18
    COURT REPORTER:                 MR. TODD ANDERSON, RMR, CRR
19                                  United States Court Reporter
                                    1100 Commerce St., Rm. 1625
20                                  Dallas, Texas   75242
                                    (214) 753-2170
21

22

23        Proceedings reported by mechanical stenography and

24   transcript produced by computer.

25
```

1    VIDEOCONFERENCE REARRAIGNMENT HEARING - JUNE 11, 2020

2                    P R O C E E D I N G S

3        THE COURT:  The Court calls Case Number

4    3:19-CR-112-K, United States of America versus John Mervyn

5    Price.

6            Mr. Price, will you state your full name, please?

7            THE DEFENDANT:  My full name is John Mervyn Price.

8            THE COURT:  And who is here for Mr. Price?

9        MR. FINN:  David Finn.

10           THE COURT:  And who is here for the Government?

11           MS. WALTERS:  Mary Walters, Your Honor.

12           THE COURT:  Mr. Price, can you see, hear, and

13   understand me okay?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Can you hear and understand the

16   Government all right -- I mean your attorney all right?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  Can you also see and hear and understand

19   the Government's attorney all right?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  Okay.  If that ever changes, you know,

22   let us know as soon as possible.  Raise your hand, you know,

23   yell, whatever, to get my attention so that we can fix it.

24   Would you do that, sir?

25           THE DEFENDANT:  Yes, Your Honor.  Thank you.

1          THE COURT:  Okay.  I'm present in my chambers with my

2    courtroom deputy.  And as you can see, also Mr. Jacobson, who

3    is the courtroom deputy for District Judge Kinkeade is on also,

4    and you see the screen for the court reporter, Mr. Anderson, as

5    well.

6          And just to confirm, sir, you are participating via

7    Zoom, a video teleconferencing service, correct, Mr. Price?

8          THE DEFENDANT:  That is correct, Your Honor.

9          THE COURT:  And can you tell me what city you're in?

10         THE DEFENDANT:  I'm in Dallas, Texas.

11         THE COURT:  Mr. Price, Judge Kinkeade issued an order

12   setting this hearing via video teleconference, and he indicated

13   certain things in his order, including the fact that members of

14   the public are able to join into this proceeding if they would

15   like to, just as though it was an open courtroom.  Do you

16   understand that?

17         THE DEFENDANT:  Yes, I do, Your Honor.

18         THE COURT:  Certainly under normal circumstances we

19   all would be participating in this proceeding from --

20   physically from the courtroom, but, of course, we're in the

21   midst of the COVID-19 pandemic, so many of the court's normal

22   operations have been suspended or postponed to ensure the

23   safety of everyone and to avoid the spread of COVID-19.

24         A felony guilty plea arraignment such as this -- or

25   rearraignment is one of the proceedings that our chief judge,

1    Barbara Lynn, has found cannot be conducted in person without

2    seriously jeopardizing the public health and safety.

3            As the presiding judge in your case, Judge Kinkeade's

4    order -- in his order he found that the felony guilty plea

5    hearing in your case could not be further delayed without

6    serious harm to the interests of justice, and that although the

7    Court would prefer not to conduct this hearing via video

8    teleconference, he found that delaying the hearing would cause

9    serious harm to the interests of justice.

10           So Judge Kinkeade found that the indefinite delay of

11   this federal -- this felony guilty plea hearing could undermine

12   the public's confidence in the judicial system, and that would

13   include the community, any victims, you, and your family.  But

14   both the Coronavirus Aid, Relief, and Economic Security Act,

15   CARES Act for short, and the special orders issued by Chief

16   Judge Lynn authorize the use of video teleconferencing if

17   certain conditions are met.  In this instance, the first and

18   main condition is that after consulting with an attorney you

19   agree to proceed in this manner.

20           Did you have a chance to speak with Mr. Finn about

21   the possibility of proceeding via video teleconferencing today?

22           THE DEFENDANT:  Yes, I did, Your Honor.

23           THE COURT:  Do you understand that you have the right

24   to proceed in person?

25           THE DEFENDANT:  I do understand that, Your Honor,

1  persist in a plea of not guilty if one has already been made.

2  And if you plead not guilty, the Constitution of the United

3  States guarantees you the following rights:

4         The right to a speedy and public trial by a jury in

5  this district; the right at such trial for you to see, hear,

6  and cross-examine all witnesses against you; the right to the

7  power and process of the Court to compel the production of any

8  evidence, including the attendance of any witnesses in your

9  favor; the right to have the assistance of an attorney at all

10 stages of the proceedings and the right to have an attorney

11 appointed should you be unable to obtain an attorney.

12        At such trial, you could not be compelled to testify.

13 And whether you would testify is a matter in which your

14 judgment alone would control.

15        And at such trial --

16        Mr. Finn?

17        MR. FINN:  Yes, ma'am.

18        THE COURT:  I know you're in a lot of pain.  Can I

19 ask you to mute yourself until I ask you a question?

20        MR. FINN:  I'm sorry, Judge.  How do I do that?

21        THE COURT:  There's a little microphone on your

22 screen.

23        MR. FINN:  Yeah, I'll do that.

24        THE COURT:  Touch that.

25        MR. FINN:  I'm sorry, I'm just in pain.

```
 1                THE COURT:  No problem.  No problem.
 2                MR. FINN:  Okay.
 3                THE COURT:  At such trial, you could not be compelled
 4     to testify, and whether or not you would testify is matter in
 5     which your judgment alone would control.
 6                And at such trial, the Government would be required
 7     to prove your guilt beyond a reasonable doubt before you could
 8     be convicted of the offenses to which you're proposing to plead
 9     guilty.  And if you were found guilty, you would have the right
10     to appeal your convictions.
11                Do you understand, Mr. Price, that you have and are
12     guaranteed each of these constitutional rights?
13                THE DEFENDANT:  I do understand, Your Honor.
14                THE COURT:  Sir, on the other hand, if you plead
15     guilty and your guilty pleas are accepted, there will not be a
16     further trial of any kind.  So by pleading guilty, you waive
17     your right to trial as well as all those other rights
18     associated with trial that I've just explained to you, except,
19     of course, your right to always be represented by an attorney.
20     Do you understand, sir?
21                THE DEFENDANT:  Yes, I do, Your Honor.  I understand.
22                THE COURT:  Mr. Price, generally a defendant who's
23     accused of a crime cannot plead guilty unless he's actually
24     guilty of that criminal offense.  Also, in Federal court it is
25     the Judge who determines the penalty if a defendant is
```

```
 1              MR. FINN:  Waive it.

 2              THE DEFENDANT:  We are going to waive the reading.

 3    Mr. -- my attorney has gone at great length to explain every

 4    charge and the sentence involved in this.  I will waive the

 5    right.

 6              THE COURT:  Sir, you also have the right to have

 7    explained to you the essential elements of each of the -- of

 8    the offenses to which you're proposing to plead guilty.

 9              MR. FINN:  Waive it.

10              THE COURT:  Mr. Finn, I haven't called on you yet,

11    please, sir.

12              MR. FINN:  Judge, listen.

13              THE COURT:  Mr. Finn --

14              MR. FINN:  I like you.  I do.

15              THE COURT:  Mr. --

16              MR. FINN:  I do like you, but --

17              THE COURT:  Mr. Finn, you need to watch yourself.

18    You need to --

19              MR. FINN:  No.

20              THE COURT:  Do you need us to recess?

21              MR. FINN:  No, Judge.  You need to watch yourself.

22              THE COURT:  Do we need to recess this hearing?

23              MR. FINN:  You need to watch yourself.

24              I just got you reversed at the Fifth Circuit.  And I

25    like you a lot, but you're not to interfere with me talking to
```

1   my client.

2          THE COURT:  Okay.  You didn't get me reversed.  You

3   got the District Judge reversed.  And I know the case you're

4   talking about.  It has absolutely nothing to do with what's

5   going on here today.

6          MR. FINN:  Don't interfere with me talking to my

7   client --

8          THE COURT:  Are you on some kind of drugs?

9          MR. FINN:  -- or we'll just end this.

10          THE COURT:  Are you on some of kind of drugs?

11          MR. FINN:  We'll just end this.

12          THE COURT:  Are you on some kind of drugs?

13          MR. FINN:  No.  I'm taking Advil, but I'm in extreme

14   pain.

15          THE COURT:  Well, you're --

16          MR. FINN:  It's for my shoulder.

17          THE COURT:  You're inappropriate.  We're in court.

18   We're --

19          MR. FINN:  Judge, come on.  Come on.

20          THE COURT:  Do you prefer that we --

21          MR. FINN:  I mean, I've known you for 15, 20 years.

22          THE COURT:  Do you prefer -- and I'm being very

23   respectful to you all, though you're not giving me the same

24   courtesy, Mr. Finn.  Do you prefer to recess these proceedings

25   until you feel better?

|    |                                                              |
|----|--------------------------------------------------------------|
| 1  | MR. FINN:  No.  Let's get it done.                           |
| 2  | THE COURT:  Well, then, you need to be quiet.                |
| 3  | MR. FINN:  Let's get it done.  But I'm not to get            |
| 4  | bullied.  I'm not getting bullied.                           |
| 5  | THE COURT:  Mr. Finn --                                      |
| 6  | MR. FINN:  Yes, ma'am.                                       |
| 7  | THE COURT:  -- something is wrong with you today if          |
| 8  | you think you're being bullied.                              |
| 9  | Are you sure you're not on any kind of drugs that            |
| 10 | impair you or --                                             |
| 11 | MR. FINN:  No.  I'm on the Advil.                            |
| 12 | THE COURT:  Okay.                                            |
| 13 | MR. FINN:  And I'm in extreme pain because I just            |
| 14 | broke my shoulder and --                                     |
| 15 | THE COURT:  Do you want to wait until you feel better        |
| 16 | to have this hearing?                                        |
| 17 | MR. FINN:  No.  I want to get this thing done.               |
| 18 | THE COURT:  Then I need you to be quiet --                   |
| 19 | MR. FINN:  But I don't want you --                           |
| 20 | THE COURT:  -- until I get to you.                           |
| 21 | MR. FINN:  But, Judge, listen.  Come on.                     |
| 22 | THE COURT:  You need to be quiet until I get to you.         |
| 23 | MR. FINN:  Okay.  All right.                                 |
| 24 | THE COURT:  If you need to consult with your client          |
| 25 | without us -- out of our earshot --                          |

1              MR. FINN:  No, no, no.

2              THE COURT:  -- then you let me know that.

3              MR. FINN:  We're fine.  He's a smart guy.  He knows

4     what's going on.

5              THE COURT:  Okay.  Sir, you have the right to have

6     explained to you the essential elements of the offense to which

7     you're proposing to plead guilty.  The essential elements are

8     what the Government would be required to prove beyond a

9     reasonable doubt if you were to go to trial before you could be

10    convicted of those offenses.

11             And, of course, the -- some of the essential elements

12    for the like offenses are going to be the same.  In other

13    words, the essential elements for the wire fraud for all those

14    counts are going to be the same.  The essential elements for

15    mail fraud are going to be the same.

16             Do you understand, sir?

17             THE DEFENDANT:  I do understand, Your Honor.

18             THE COURT:  All right.  I am going to call upon the

19    Assistant United States Attorney to state the essential

20    elements by group like that.

21             MS. WALTERS:  Yes, Your Honor.

22             I will state that for Count One it charges conspiracy

23    to commit mail and wire fraud, in violation of 18 United States

24    Code, Section 1349.

25             Counts Two through Eleven are mail fraud, in

```
 1   conditions of pretrial release that are set in this case.
 2            Does the Government have any objection to continuing
 3   Mr. Price on those same conditions pending sentencing?
 4            MS. WALTERS:  No objection, Your Honor.
 5            THE COURT:  Mr. Price, I make the specific findings
 6   that -- by clear and convincing evidence that you're not likely
 7   to flee or pose a danger to any other person or the community
 8   and continued on the same conditions of release that were set
 9   by me back in May of last year.
10            Do you have any question about what those conditions
11   are, sir?
12            THE DEFENDANT:  No, Your Honor, I do not.
13            THE COURT:  Well, that concludes our hearing, then,
14   sir.  Good luck to you.
15            THE DEFENDANT:  Thank you very much, Your Honor.
16            THE COURT:  And the attorneys are excused as well.
17   Thank you.
18            MS. WALTERS:  Thank you.  Good afternoon, Your Honor.
19            MR. FINN:  Judge?
20            THE COURT:  Yes.
21            MR. FINN:  Would you call me and tell me what I did
22   to offend you?
23            THE COURT:  Mr. --
24            MR. FINN:  I will give you my cell phone number.
25            THE COURT:  Mr. Finn?
```

1          MR. FINN:  Yes, ma'am.

2          THE COURT:  Maybe at another time, but not now.

3          MR. FINN:  Okay.

4          THE COURT:  Okay.

5          MR. FINN:  Bye.

6          THE COURT:  Bye.

7          (Hearing adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          INDEX
 2  Essential elements read................................. 22
 3  Pleas received......................................... 30
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Todd Anderson, RMR, CRR      (214) 753-2170

1      I, TODD ANDERSON, United States Court Reporter for the

2   United States District Court in and for the Northern District

3   of Texas, Dallas Division, hereby certify that the above and

4   foregoing contains a true and correct transcription of the

5   proceedings in the above entitled and numbered cause.

6      WITNESS MY HAND on this 29th day of June, 2020.

7

8

9
                                    /s/Todd Anderson
10                                  TODD ANDERSON, RMR, CRR
                                    United States Court Reporter
11                                  1100 Commerce St., Rm. 1625
                                    Dallas, Texas  75242
12                                  (214) 753-2170

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT B

**Judy Flowers**

| | |
|---|---|
| **From:** | Kate Marcom |
| **Sent:** | Thursday, March 10, 2022 11:01 AM |
| **To:** | Barbara M G Lynn |
| **Cc:** | Judy Flowers |
| **Subject:** | Memo re Conversation with David Finn |

Memo re Conversation with David Finn
Name: Kate Marcom
Date: March 10, 2022, at 10:58 am


On Thursday, March 10, 2022, at approximately 10:30 am, I received a call from Attorney David Finn, which was transferred to me from Judy Flowers, Judge Lynn's judicial assistant. I informed Mr. Finn that he had been due in Judge Lynn's Court at 10:00 am, and began to ask him for an explanation for his absence, when he interrupted me. Mr. Finn rambled for several minutes. He volunteered, without prompting, that he was at home throwing up blood "from both ends," that it "wasn't pretty" and that I didn't want any details, that it had happened to him before but "not for a while," that he previously had a problem with ulcers, that "he wasn't sure what caused it but he had just gotten the booster," that "I could only imagine what it looked like," and that he had called his doctor who was going to "phone in something for him." I asked Mr. Finn where he was and he stated that he was at home, and was not going to or on his way to visit his doctor.

Regarding the court proceeding, Mr. Finn stated, "This Norwood thing, it's not a big deal, it's only sentencing, it's an agreed deal, it's not like it's trial." Mr. Finn had a normal speaking voice and affect, and did not particularly sound unwell.

I asked for Mr. Finn's cell phone number and told him to be nearby his phone in case Judge Lynn wanted to speak with him. He stated "if I don't pick up it's because I'm throwing up blood."

Exhibit B

1

# EXHIBIT C

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | (ROUGH DRAFT GIVEN TO |
| | ) | JUDGE LYNN) |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 3:19-CR-352 |
| | ) | |
| LEMONT ISRAEL NORWOOD, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————————— | ) | |

STATUS CONFERENCE —— VIA CONFERENCE CALL
BEFORE THE HONORABLE BARBARA M.G. LYNN
UNITED STATES DISTRICT COURT JUDGE
AUGUST 27, 2021
DALLAS, TEXAS

FOR THE PLAINTIFF:

    MYRIA W. BOEHM
    OFFICE OF U.S. ATTORNEY — NDTX
    1100 Commerce Street, Suite 300
    Dallas, TX  75242
    (214) 659-8600

FOR THE DEFENDANT:

    DAVID M. FINN
    MILNER FINN PRICE
    2828 N. Harwood, Suite 1950
    Dallas, TX 75201
    (214) 651-1121

    Proceedings reported by mechanical stenography; transcript
produced by computer-aided transcription.

DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
Federal Official Court Reporter
1100 Commerce Street, 15th Floor
Dallas, TX  75242
(214) 753-2325

Exhibit C

1               (PROCEEDINGS BEGAN AT 2:00 PM.)

2               THE COURT:  All right.  This is Judge Lynn.  May I have

3       appearances, please?  For the Government?

4               MS. BOEHM:  Good morning, Judge Lynn.  Myria Boehm.

5               MR. FINN:  Good morning, Judge.  David Finn.  How are

6       you?

7               THE COURT:  All right.  So I'm not happy about the

8       scheduling issues, Mr. Finn.  When I send you a piece of

9       correspondence directing that I either have settlement papers by

10      a particular date or you be ready for trial the following Monday

11      when the case is set, that's what I expect to happen, not that my

12      Courtroom Deputy and I have to spend a lot of time chasing you

13      down to figure out what's going to happen with your trial.

14              So I understand at this juncture that your client has

15      plea papers that you have delivered today.  He wants to do some

16      additional research.  That's my understanding with the

17      Government, having relied on the representation that the case was

18      settled.  It is not ready for trial on Monday, and I certainly

19      understand that.

20              Is that correct, Ms. Boehm?

21              MS. BOEHM:  That's correct, Your Honor.  In addition, I

22      can't try it on Monday, anyway.  I'm ill and I can't come to the

23      office.

24              THE COURT:  All right.

25              MR. FINN:  Judge?

```
 1              THE COURT:  All right.  Are you moving for a
 2   continuance?
 3              MR. FINN:  Judge?  This is David Finn.
 4              THE COURT:  Mr. Finn, I'll get to you -- I'll get --
 5   Mr. Finn, I'll get to you when I get to you.
 6              MR. FINN:  Okay.
 7              THE COURT:  Ms. Boehm, are you moving for a
 8   continuance?
 9              MS. BOEHM:  Your Honor, I certainly can.  I apologize.
10   I'm trying to avoid that.  I was hoping we would have papers, but
11   I can file one due to my inability to be there on Monday, if
12   that's -- if that's what the Court wants.  Absolutely.
13              THE COURT:  All right.  Mr. Finn, are you moving for a
14   continuance?
15              MR. FINN:  I will if you want me to, Judge.  Judge,
16   give me ---
17              THE COURT:  Well, I don't think -- If anyone has had
18   the impression that cases just magically disappear from the
19   docket because I am of the mind to do that, you haven't been in
20   my court before.
21              MR. FINN:  No.  I've been in your court before.
22              THE COURT:  So if you're not ready to go -- Yes, I
23   understand that, Mr. Finn.
24              MR. FINN:  Judge -- Judge -- Judge, give me a second,
25   please.
```

```
 1              THE COURT:  I will.  Mr. Finn, --

 2              MR. FINN:  Okay, all right.

 3              THE COURT:  -- stop talking until I call on you.

 4              MR. FINN:  Please -- Please give me a chance.

 5              THE COURT:  Do not talk until I call on you.

 6              All right.  Someone is going to move for a continuance,

 7     and we'll see who that is at the end of the call.

 8              Now, Mr. Finn, you may speak.

 9              MR. FINN:  Judge, here's the problem:  I had a home

10     invasion, broke my shoulder, got COVID about six months ago.  And

11     then I got the COVID shot, Pfizer, and it knocked me on my you

12     know what.  And I'm going to cardiologists, one specialist.

13              So I've been going out to Seagoville prison with the

14     plea paperwork the last two weeks.  They won't let me in because

15     I've got a fever, and I don't know what's causing it.  But today

16     I went to the 7-Eleven or Chevron and got ice and put it on my

17     forehead so I could get in.  I spent two hours with my guy.

18              He's going to plea, you know, but he wants to look at,

19     you know, some law library B.S. and it's down.  And I said, "Hey,

20     how about if I come by tomorrow?"  And, you know, I'll put ice on

21     my forehead again.  I'll get in, and he's going to plea.

22              So I want to make sure, Judge, you know, that the

23     Government -- And I don't know Ms. Boehm at all.  I mean I've

24     never had a case with her before.  She has been a complete pro,

25     and I'm the one that's dropped the ball and, you know, so don't
```

1  -- don't -- Please -- I mean do whatever you want, but don't hold

2  it against her.  It's not her fault.  It's my fault.

3          THE COURT:  Okay.  If it wasn't clear to you, I'm not

4  holding it against her, and I know it's your fault.  And if you

5  had problems getting into the prison because you were ill, the

6  solution to that is not to take out those who are checking to

7  make sure people don't have a fever.  It's to call the Court and

8  say you need to get your plea papers in there and arrange a video

9  conference with your client which, of course, I could have

10  arranged for you had you requested it.  So ---

11          MR. FINN:  Judge, look -- look, I -- I almost sent --

12  I'm 57.  Okay?  I'm, you know -- I almost sent Thomas Wynn, a

13  young lawyer, in there, but when these people hire me, they want

14  to see my face, and I just couldn't get in.

15          THE COURT:  Okay.  Well, if you are ill and you can't

16  get into the prison, then you can see your client on a video like

17  most of the lawyers who are appearing in my court are doing.

18          So here's what's going to happen:  I am taking this as

19  your request, Mr. Finn, for a continuance because you're not

20  ready for trial on Monday and your client wants an extension to

21  review the plea papers and do research at Seagoville.  Is that

22  correct?

23          MR. FINN:  Yes, Judge.  And -- And let me just -- Can

24  I -- Can I just be straight up with you?

25          THE COURT:  Well, that's always advisable, Mr. Finn.

```
 1              MR. FINN:  Okay.  Hey, my daughter just got elected
 2    Student Body President at Hockaday.
 3              But he's done -- he's -- he's already done federal time
 4    on a similar case.  He knows he's getting a big number.  The
 5    Government's evidence is overwhelming.  He's going to plea.  He's
 6    going to plea.
 7              So, yes, you can take this as me asking because it's
 8    not the Government's fault.  You know, Ms. Boehm's been
 9    phenomenal and, you know, I don't always say that.  You know me.
10    I don't always say that about prosecutors, but she's been
11    straight up with me for the whole time.  And my guy knows he's
12    guilty and has said he wants to plea.  There's a couple of other
13    guys.  Carter is getting a misprision and some other guy that's
14    getting money laundering.
15              I'll get this done, and I apologize for wasting your
16    time.
17              THE COURT:  Okay.  The case is reset for September
18    27th.  And if I don't have plea papers in my hands by the 10th or
19    16th, then I will have him -- Is that -- Alicyn, I don't have a
20    calendar in front of me.  What is the Friday ten days before
21    trial?  Is that September 17th?
22              COURTROOM DEPUTY:  Let me double-check.
23              MR. FINN:  Judge, I'm going to get this done.  I'm
24    going to get it done.
25              THE COURT:  Okay.
```

```
1              MR. FINN:  He's just ---

2              THE COURT:  All right.  Well, we're -- we're not going

3    to rely on the prospect of getting it done.  We're going to get

4    it done.  If I don't have the settlement papers on September 17th

5    by noon, then I'm bringing your client into the courthouse on

6    Monday, September 20th, for a chat with me with the case being

7    set for trial on September 27th.

8              Any questions?

9              MR. FINN:  I'm supposed to -- Judge, I'm supposed to

10   meet with him on Tuesday.  He needs to get on -- You know, he's

11   just a nervous nilly and he likes to do his research.  I mean for

12   a, you know, for a crook, he's thoughtful.  And he's like,

13   "Hey" -- I've said, "Hey, can I come tomorrow," you know, meaning

14   Saturday.  "No.  The library's not open and, you know, COVID's

15   jacked everything up."  So it's just all messed up.

16             But I know you're a tough nut, Judge.  I mean I know

17   that about you, and I like you even though you may not like me.

18   I'll -- I'll get it done.

19             THE COURT:  Okay.  But deal -- You have deadlines here,

20   Mr. Finn, not aspirations.  September 17th, by noon, plea papers

21   in my hand, or if he comes to court on the 20th at 9:00, then we

22   go to trial on September 27th.  Those are the dates that should

23   be reflected in the Order.

24             For the record, Ms. Boehm, I wasn't suggesting that you

25   had done anything at all.
```

```
 1          Anything else?
 2          MS. BOEHM:  Not from the Government.  Thank you,
 3   Your Honor.
 4          THE COURT:  Okay.  Thank you, all.
 5          MR. FINN:  Judge?
 6          THE COURT:  Yes.
 7          MR. FINN:  Okay, bye.
 8          THE COURT:  Good-bye.  Thank you.
 9          (Hearing adjourned at 2:15 PM.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

# EXHIBIT D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


UNITED STATES OF AMERICA,          )
                                   )
                   Plaintiffs,     )
                                   )
     VS.                           )  No. 3:19-CR0352-M-(1)
                                   )
LEMONT ISRAEL NORWOOD,             )
                                   )
                   Defendant.      )
_____    )


SENTENCING HEARING -- STATEMENT FOR THE RECORD
BEFORE THE HONORABLE BARBARA M.G. LYNN
UNITED STATES DISTRICT COURT JUDGE
MARCH 10, 2022
DALLAS, TEXAS

FOR THE PLAINTIFF:

    MYRIA WYNN BOEHM
    UNITED STATES ATTORNEY'S OFFICE
    1100 Commerce, Third Floor
    Dallas, TX  75242
    (214) 659-8600


FOR THE DEFENDANT:

    DAVID M. FINN
    MILNER FINN PRICE
    2828 North Harwood, Suite 1950
    Dallas, TX 75201
    (214) 651-1121


    Proceedings reported by mechanical stenography; transcript
produced by computer-aided transcription.
_____

DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
Federal Official Court Reporter
1100 Commerce Street, 15th Floor
Dallas, TX  75242
(214) 753-2325

```
 1                    (Sentencing Hearing scheduled for 10:00 AM.)

 2                    (PROCEEDINGS BEGAN AT 10:42 AM.)

 3             THE COURT:  Mr. Norwood, I'm Judge Lynn.  My intention

 4    was to sentence you today in connection with your plea of guilty

 5    to Counts 1 and 2 of the Superseding Indictment.  Your lawyer,

 6    Mr. Finn, is not here.  The Court called his office and asked his

 7    staff to get in touch with him.  I have not talked to him

 8    directly.  He called back in response to my call saying that he

 9    was ill and was on his way to his doctor.  But because he is not

10    here, I cannot proceed.  Have you talked to him recently?

11             THE DEFENDANT:  No, ma'am.

12             THE COURT:  Okay.  All right.  Well, he is your

13    retained counsel, so I didn't select him for you.  You selected

14    him for yourself.  I can't proceed without you having a lawyer

15    here to represent you.  And I -- This is the first notice that I

16    have that he wasn't here.

17             Is there anything that you would like me to do other

18    than continue the matter?

19             I'm not happy that I'm just hearing notice about this

20    just now.  That will not in any way affect you.  My concern that

21    he's not concern here is that I can't proceed without you having

22    a lawyer.

23             Is there anything you want to say to me this morning?

24             THE DEFENDANT:  No, ma'am.

25             THE COURT:  All right.  I'm sorry about this,
```

```
 1    Mr. Norwood.  If I had another way to proceed, for example, not
 2    that this would ever happen with Ms. Boehm.  If she's supposed to
 3    be in court, she will be in court.  But if by chance she wasn't
 4    here, I could call the U.S. Attorney's Office and they'd send
 5    somebody else.  If your lawyer was a public defender, I could do
 6    the same, but your lawyer is Mr. Finn.  You've selected him, and
 7    he's -- he's your lawyer of record.  And if he's not here, I
 8    can't proceed.  So I'll get you on the docket just as quickly as
 9    I can.  Are you in Limestone?
10              THE DEFENDANT:  No, ma'am; Seagoville.
11              THE COURT:  Okay.  All right.  Well, at least you don't
12    have to go all the way to Limestone.  That's a longer haul than
13    you've got.  So I'll get you on the docket just as quickly as I
14    can, Mr. Norwood.
15              THE DEFENDANT:  I understand.
16              THE COURT:  All right.  Thank you.
17              (Hearing adjourned at 10:44 AM.)
18
19
20
21
22
23
24
25
```

<u>CERTIFICATE OF OFFICIAL REPORTER</u>

I, Deborah A. Kriegshauser, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of Texas, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 11th day of May, 2022.


/s/ Deborah A. Kriegshauser
_____
DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER

# EXHIBIT E

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


UNITED STATES OF AMERICA,     )
                                 )
               Plaintiffs,   )
                                 )
   VS.                       )  No. 3:19-CR0352-M-(1)
                                 )
LEMONT ISRAEL NORWOOD,      )
                                 )
               Defendant.    )
————————————————————————————)


SENTENCING HEARING -- STATEMENT FOR THE RECORD
BEFORE THE HONORABLE BARBARA M.G. LYNN
UNITED STATES DISTRICT COURT JUDGE
MARCH 22, 2022
DALLAS, TEXAS

FOR THE PLAINTIFF:

    MYRIA WYNN BOEHM
    UNITED STATES ATTORNEY'S OFFICE
    1100 Commerce, Third Floor
    Dallas, TX  75242
    (214) 659-8600


FOR THE DEFENDANT:

    DAVID M. FINN
    MILNER FINN PRICE
    2828 North Harwood, Suite 1950
    Dallas, TX 75201
    (214) 651-1121


    Proceedings reported by mechanical stenography; transcript
produced by computer-aided transcription.

DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
Federal Official Court Reporter
1100 Commerce Street, 15th Floor
Dallas, TX  75242
(214) 753-2325

```
 1              (Sentencing scheduled for 9:30 AM on 3-22-2022.)

 2              (Telephone call to David Finn's cell phone at 10:15 AM)

 3              VOICEMAIL:  You have reached David Finn in Dallas.

 4    Please leave a message.  Thank you.

 5              At the tone, please record your message.  When you are

 6    finished recording, you may hang up or press "1" for more

 7    options.

 8              THE COURT:  Mr. Finn, this is Judge Barbara Lynn

 9    calling regarding your client Mr. Norwood who is scheduled for

10    sentencing today, your having failed to appear when he was to be

11    sentenced previously and now you are not here again.  I am

12    shocked.  I find your conduct deplorable in representing the

13    interests of your client.  I require you to appear in the court

14    by noon today.  Thank you.

15              (End of telephone call.)

16              (Record made in chambers following phone call:)

17              THE COURT:  The Court placed a call to Mr. Finn that is

18    transcribed.  I called him at a number ending with "6629" and

19    received a voicemail in his voice which I recognize.  It's 10:18.

20    His hearing was scheduled for 9:30.

21              (End of record at 10:18 AM.)

22              (Record made in court at 10:19 AM:)

23              U.S. MARSHAL:  Should we bring out Mr. Norwood?

24              THE COURT:  Mr. Finn, I don't know where he is.  So I

25    can't say that he needs to be here immediately because I don't
```

1   know where he is.

2         MS. BOEHM:  I understand.

3         THE COURT:  So my thought was noon would give him a

4   reasonable opportunity to get here from wherever he is.  I would

5   not place the fact that he will be here by noon.  I regret the

6   inconvenience to your agent, but I think everybody needs to sit

7   tight and hope he will be here by then.

8         MS. BOEHM:  Understood, Your Honor.  Thank you.

9         THE COURT:  Just bring him out for a moment, please.

10         (Mr. Norwood brought out to the courtroom and seated in

11   the jury box at 10:20 AM:)

12         THE COURT:  Mr. Norwood, take your usual seat there.

13         Just let him sit there in the jury box.  Just move

14   down, please.

15         Mr. Norwood, your counsel is Mr. Finn.  He is not here

16   yet again.  I have called him myself.  I called him on his cell

17   phone.  I got a voicemail.  I told him I expected him to be here

18   by noon.  I don't know whether he will be here or he will not.

19   He's your lawyer.  I didn't pick him for you.  You and your

20   family picked him for you.  It's up to you how you proceed here.

21   I've tried to be a reasonably optimistic person, so I'm going to

22   be optimistic that he's going to be here by noon.  And if he is,

23   then we will proceed at that time.

24         No penalty to you, obviously, because of his delay.  If

25   he doesn't appear by noon, the Court is going to take an action

1   with respect to his proceeding in this court.  So you'll have to

2   make a decision at that point about what you do about him

3   representing you.  Have you heard from him since we met the last

4   time?

5           THE DEFENDANT:  No.

6           THE COURT:  All right.  Mr. Norwood, do you have any

7   questions you want to ask me?

8           THE DEFENDANT:  No.

9           THE COURT:  So at 12:00 -- I'm just going to see if he

10  gets here between now and noon.  Counsel for the Government is

11  going to remain available with any witnesses she cares to call.

12  I will remain available until noon.  You're already here, so

13  we're just going to keep her here until then.  Okay.

14          THE DEFENDANT:  Okay.  Thank you.

15          THE COURT:  Thank you.

16          (The Defendant was brought back to the holding cell.)

17          THE COURT:  Okay, Ms. Boehm.  I've done all I can do at

18  this moment.  There is more I can do but I'm not going to do it

19  at this moment.

20          MS. BOEHM:  Thank you, Your Honor.  I appreciate it.

21          (End of record at 10:22 AM.)

22          (Telephone call to David Finn's office at 11:52 AM:)

23          THE COURT:  Yes, this is Judge Lynn.  I've been trying

24  to reach Mr. Finn on his cell phone unsuccessfully.  Is he there?

25          (Mr. Finn's office staff indicated they do not know

1    where he is.)

2           THE COURT:  Okay.  Thank you.

3           (End of telephone call at 11:52 AM.)

4           (Statement of Record made in open court at 12:00 PM:)

5           THE COURT:  My apologies to both of you.

6           MS. BOEHM:  That's okay, Your Honor.  I'm here the rest

7    of the day in case something happens where you need me to come

8    back up.

9           THE COURT:  Okay.  Thank you.  And if that were to

10   happen, I would accept your proffer.

11          MS. BOEHM:  Thank you.

12          (End of record at 12:01 PM.)

## CERTIFICATE OF OFFICIAL REPORTER

I, Deborah A. Kriegshauser, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of Texas, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 11th day of May, 2022.


/s/ Deborah A. Kriegshauser
_____
DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER

# EXHIBIT F

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA,           )
                                    )
                 Plaintiffs,        )
                                    )
     VS.                            )  No. 3:19-CR0352-M-(1)
                                    )
LEMONT ISRAEL NORWOOD,              )
                                    )
                 Defendant.         )
_____)


     SENTENCING HEARING -- MR. FINN ADDRESSING THE COURT
          BEFORE THE HONORABLE BARBARA M.G. LYNN
           UNITED STATES DISTRICT COURT JUDGE
                    APRIL 5, 2022
                    DALLAS, TEXAS

FOR THE PLAINTIFF:

     MYRIA WYNN BOEHM
     UNITED STATES ATTORNEY'S OFFICE
     1100 Commerce, Third Floor
     Dallas, TX  75242
     (214) 659-8600


FOR THE DEFENDANT:

     DAVID M. FINN
     MILNER FINN PRICE
     2828 North Harwood, Suite 1950
     Dallas, TX 75201
     (214) 651-1121


     Proceedings reported by mechanical stenography; transcript
produced by computer-aided transcription.

_____

          DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
               Federal Official Court Reporter
               1100 Commerce Street, 15th Floor
                    Dallas, TX  75242
                    (214) 753-2325

2

1                    (Proceedings at the conclusion of the sentencing:)

2                    THE COURT:  All right.  If there's nothing further

3      then, that concludes our proceeding.

4                    MR. FINN:  Thank you, Judge.

5                    COURT SECURITY OFFICER:  All rise.

6                    MR. FINN:  Judge, before you leave, can I say

7      something?

8                    THE COURT:  Yes.  It's all going to be on the record,

9      Mr. Finn.

10                   MR. FINN:  That's fine.

11                   THE COURT:  Are you finished with Mr. Norwood?

12                   MR. FINN:  Yes, ma'am.  I'm finished with Mr. Norwood.

13                   THE COURT:  All right, Mr. Norwood.  Thank you.  You

14     may step out, sir.  Thank you.

15                   Have a seat, Ms. Boehm.  Stay where you are, please.

16                   MS. BOEHM:  Yes.

17                   THE COURT:  Go ahead, Mr. Finn.

18                   MR. FINN:  Judge, I wanted to personally apologize to

19     you.  I've got a progressive disease that is trying to kill me,

20     and it's -- The devil is pulling hard on one arm and God's

21     pulling hard on the other, and the jury's out on who's going to

22     win, but I've got a program.  I've got a plan.  Brett Stahlcup

23     has been my guardian angel.  He's been sober 32 years.  Judge

24     Kinkeade has been my mentor, and I'm doing two AA classes a day.

25     I'm doing intensive outpatient Monday, Tuesday and Thursday from

```
 1   6:00 to 9:00 PM.  That's group, and then I've got an individual
 2   counselor who's doing this treatment called "EMDR" which it
 3   brings up stuff that I buried.  My mom, she was an SMU law grad,
 4   but she was a schizophrenic bipolar and did stuff that I don't
 5   even want to talk about, but I'm focused like a laser beam on
 6   this.  If I don't, it's going to kill me, plain and simple.
 7          I was throwing up blood.  I had a seizure when I was
 8   going through detox.  I don't remember three hours.  I mean it
 9   was awful.  I'm 60 years old.  I got four good kids, but I got a
10   huge problem.  And I wanted to personally apologize to you face
11   to face and let you know:  I know the jury's out, and you may be
12   skeptical.  I don't -- I wouldn't blame you, but, you know, it's
13   been about three weeks now and I'm spending a lot of time on
14   this, and I'm fighting with everything I've got.  And I've kept
15   Judge Kinkeade, Brett Stahlcup -- Whenever I go and I've got a
16   negative UA, I send it to Brett.  When the counselors say,
17   "Mr. Finn has been showing up and participating in group," I send
18   that to Brett Stahlcup.  I didn't feel comfortable sending it to
19   you because I didn't want to make you mad or something.
20          So I don't know if you're getting these updates or not.
21   I think Judge Kinkeade is aware of this, but I apologize.
22              THE COURT:  Okay.  All right.  Anything further?
23              MS. BOEHM:  No, Your Honor.
24              THE COURT:  Okay.  Thank you.
25              MR. FINN:  Thank you.
```

1                    (Hearing adjourned at 1:50 PM.)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT G

DO NOT DISSEMINATE WITHOUT PERMISSION OF USMS

UNCLASSIFIED // LES

**U.S. Department of Justice**
United States Marshals Service

# Court Facility Incident Report

**1. DATE OF REPORT:** 09/27/2021    **2. DATE OF INCIDENT:** 09/23/2021    **3. TIME OF INCIDENT:** 1000

**4. BUILDING NAME:** Earle Cabell Federal Bldg & US Courthouse    **5. BUILDING ADDRESS:** 1100 Commerce, Dallas TX 75242

**6. WAS SUBJECT DETAINED?** ☐ Yes   ☐ No    **7. REPORTING DISTRICT:** NTX

**8. TYPE OF INCIDENT (Check applicable box):**

| | | |
|---|---|---|
| ☐ Alarm Activation | ☐ Judicial Facility/Protective Facility Escort Incident | ☐ Suspicious Activity |
| ☐ Assault & Battery (Including Attempts) | ☐ Malfunctioning Equipment | ☐ Inappropriate Communications (Incl. Threats) |
| ☐ Completed | ☐ Medical Emergency | ☐ Suspicious Individuals |
| ☐ Attempted | ☐ Missing Property | ☐ Suspicious Packages/Letters |
| ☐ Bomb Threat | ☐ Non-Compliance | ☐ Suspicious Vehicles |
| ☐ Contraband | ☐ Physical Security Breach | ☐ Unattended Packages |
| ☐ Damage, Loss, & Vandalism | ☐ Open/Unsecured Access Point | ☐ Unmanned Aerial Vehicles |
| ☐ Demonstration | ☐ Forced Entry | ☐ Use of Force |
| ☐ Disruptive Person | ☐ Unauthorized Access | ☐ Vehicle Break-Ins/Burglaries |
| ☐ Disturbance | ☐ Burglary | ☒ Other (Describe in Field #10) |
| ☐ Hostage | ☐ Vehicle Break-In | |
| ☐ Illegal Weapon | ☐ None of the Above | |

**9. CHECK APPLICABLE BOX:**

☒ Initial Report    ☐ Follow-Up Report - Initial Report Dated: _____

**10. INCIDENT DESCRIPTION (Details should cover who, what, where, when and how):**

On the above day and time, The Attorney, later identified by his business card as, David Finn, stopped at the 13th Floor Mag and talked to CSO Potter and me, CSO Dunn. During the conversation he advised that he had court in 1306 with Judge Ramirez. I believe he was just hanging out waiting to be called in. During his stay at the Mag, he turned to me and lowered himself in a football tackle stance and without any warning squeezed my knee. I immediately stood up but laughed the incident off. I told him 'do not do that again.' I also stated that I hated when people squeeze my knee because it tickles. At the time I was not offended by his actions, I just thought he was a bit weird. Shortly thereafter, Attorney Finn turned to me again in and attempt to squeeze my knee again; I picked up my radio and told him that if he touched me again I was going to hit him with the radio. Attorney Finn turned at that time and grabbed/attempted to grab CSO Potter's leg. Attorney Finn was extremely hyper and appeared to be overly friendly with everyone.

Another attorney, who was leaving Judge Ramirez's courtroom, told Attorney David Finn that the Judge wanted to him to come to the courtroom. Attorney Finn was so busy talking that he started to leave, then stopped, and told CSO Potter and me . 'the Judge could wait." We advised him that he should go to court He kept talking until someone else called him , then he reluctantly responded to court.

*I hereby certify that the information stated herein is true, complete, and accurate to the best of my knowledge.*

**Reporting CSO Name:** Cynthia Dunn    **Reporting CSO ID #:** 20986

Cynthia Dunn
Digitally signed by Cynthia Dunn
DN: cn=Cynthia Dunn, o, ou,
email=cduk.auth@usms.usdoj.gov.ecm, c=US
Date: 2021.09.27 15:04:56 -05'00'

| **Signature - Reporting CSO** | Sep 20, 2021 **Date Submitted** | **Signature - USMS JSI / COR** | **Date Submitted** |
|---|---|---|---|

Note: Completed forms containing personally identifiable information (PII) must be encrypted and include the appropriate marking
(U/LES) in the SUBJECT line of the message prior to dissemination via email outside of USMS.

UNCLASSIFIED // LES

DISTRIBUTION:   DISTRICT COR - 1 COPY / OCS - 1 COPY

Form CSO-003
Rev. 03/20

Exhibit G

## DO NOT DISSEMINATE WITHOUT PERMISSION OF USMS

**Court Facility Incident Report *(continued)***

**DATE OF REPORT:** 09/27/2021          **DATE OF INCIDENT:** 09/23/2021

**INCIDENT DESCRIPTION *(Details should cover who, what, where, when and how)* · CONTINUED:**

Attorney Finn's unusual behavior also included: He was in a conversation with a lady from Probation. It appeared the two knew each other. He lowered himself in the 'tackle stance' with her and approached her. She laughed and returned the horseplay. As she walked away from him, with her back turned, Attorney Finn lifted his right hand in the air and swatted toward her, as if to spank her on the butt. She was not within his reach at the time, nor was she aware of this gesture.

Note: Completed forms containing personally identifiable information (PII) must be encrypted and include the appropriate marking
(U/LES) in the SUBJECT line of the message prior to dissemination via email outside of USMS.
UNCLASSIFIED // LES
DISTRIBUTION:  DISTRICT COR · 1 COPY / OCS · 1 COPY
Form CSO-003
Rev. 03/20
PAGE ____ OF ____

# EXHIBIT H

## DO NOT DISSEMINATE WITHOUT PERMISSION OF USMS

UNCLASSIFIED // LES

**U.S. Department of Justice**
United States Marshals Service

**Court Facility Incident Report**

| 1. DATE OF REPORT: 09/28/2021 | 2. DATE OF INCIDENT: 09/23/2021 | 3. TIME OF INCIDENT: 1015 |
|---|---|---|

**4. BUILDING NAME:** Earle Cabell Federal Bldg & US Courthouse   **5. BUILDING ADDRESS:** 1100 Commerce, Dallas TX 75242

**6. WAS SUBJECT DETAINED?** ☐ Yes   ☒ No   **7. REPORTING DISTRICT:** NTX

**8. TYPE OF INCIDENT (Check applicable box):**

☐ Alarm Activation
☐ Assault & Battery (Including Attempts)
  ☐ Completed
  ☐ Attempted
☐ Bomb Threat
☐ Contraband
☐ Damage, Loss, & Vandalism
☐ Demonstration
☐ Disruptive Person
☐ Disturbance
☐ Hostage
☐ Illegal Weapon

☐ Judicial Facility/Protective Facility Escort Incident
☐ Malfunctioning Equipment
☐ Medical Emergency
☐ Missing Property
☐ Non-Compliance
☐ Physical Security Breach
  ☐ Open/Unsecured Access Point
  ☐ Forced Entry
  ☐ Unauthorized Access
  ☐ Buglary
  ☐ Vehicle Break-In
  ☐ None of the Above

☐ Suspicious Activity
  ☐ Inappropriate Communications (incl. Threats)
  ☐ Suspicious Individuals
  ☐ Suspicious Packages/Letters
  ☐ Suspicious Vehicles
  ☐ Unattended Packages
  ☐ Unmanned Aerial Vehicles
☐ Use of Force
☐ Vehicle Break-Ins/Burglaries
☒ Other (Describe in Field #10)

**9. CHECK APPLICABLE BOX:**

☒ Initial Report   ☐ Follow-Up Report - Initial Report Dated: _____

**10. INCIDENT DESCRIPTION (Details should cover who, what, where, when and how):**

On Thursday September 23rd 2021 CSO Dunn and I were assigned to 13th floor magnetometer. CSO Dunn was assigned to the 0730 to 1600 hour shift and I was assigned to the 0930 to 1800 hour shift. Judge Ramirez was using courtroom 1306 and had hearings scheduled for 9:00 a.m. Attorney David Finn had a case scheduled before Judge Ramirez. At approximately 10:15 am attorney Finn came to the 13th floor magnetometer to visit CSO Dunn and myself. During the visit attorney Finn grabbed CSO Dunn leg just above the knee and squeezed it. Her reaction was to pull her leg away from his grasp. CSO Dunn told him not to do that again or she would hit his hand with her radio. He crouched down with his arms spread out pretending that he was going to attack her. It appeared to be in play. Attorney Finn turned towards me and grabbed my left leg just above the knee and squeezed it. I pulled my leg away from him to break his grasp. A female employee from the probation office came through the magnetometer and attorney Flynn crouched down with his arm spread out and pretended to swat her on the buttocks. During his visit he told several stories. One story was involving a 24 year-old female who lives overseas and how he visited her for 2 weeks. Another story was about his ex wife and that they had sex 3 days after the divorce. Attorney Finn gave CSO Dunn and I his business card in case we need an attorney. Someone from Judge Ramirez's courtroom came out and told attorney Finn that the Judge was ready for his case. He took a step towards the courtroom but stopped to finish a story and said the Judge can wait. Approximately 1 or 2 minutes later attorney Finn headed for the court.

*I hereby certify that the information stated herein is true, complete, and accurate to the best of my knowledge.*

**Reporting CSO Name:** Jeff Rotter   **Reporting CSO ID #:** 11722

Jeff Potter
Digitally signed by Jeff Potter
DN: cn=Jeff Potter, o, ou,
email=Jefferd.potter@usmarshals.gov, c=US
Date: 2021.09.28 13:16:41 -05'00'

Sep 28, 2021

**Signature - Reporting CSO**   **Date Submitted**   **Signature - USMS JSI / COR**   **Date Submitted**

Note: Completed forms containing personally identifiable information (PII) must be encrypted and include the appropriate marking (U/LES) in the SUBJECT line of the message prior to dissemination via email outside of USMS.

UNCLASSIFIED // LES

Form CSO-003
Rev. 03/20

PAGE ____ OF ____

*DISTRIBUTION: DISTRICT COR - 1 COPY / OCS - 1 COPY*

Exhibit H

## DO NOT DISSEMINATE WITHOUT PERMISSION OF USMS

**Court Facility Incident Report** *(continued)*

**DATE OF REPORT:** 09/28/2021    **DATE OF INCIDENT:** 09/23/2021

**INCIDENT DESCRIPTION** *(Details should cover who, what, where, when and how)* **- CONTINUED:**
I did not keep track how long attorney Finn's visit lasted but I would  approximate it to be 15 minutes.

Note: Completed forms containing personally identifiable information (PII) must be encrypted and include the appropriate marking
(U/LES) in the SUBJECT line of the message prior to dissemination via email outside of USMS.
UNCLASSIFIED // LES
PAGE ____ OF ____                         *DISTRIBUTION:  DISTRICT COR - 1 COPY / OCS - 1 COPY*                    Form CSO-003
Rev. 03/20

# EXHIBIT I

## DO NOT DISSEMINATE WITHOUT PERMISSION OF USMS

UNCLASSIFIED // LES

**U.S. Department of Justice**
**United States Marshals Service**

**Court Facility Incident Report**

| | | |
|---|---|---|
| **1. DATE OF REPORT:** 09/27/2021 | **2. DATE OF INCIDENT:** 09/24/2021 | **3. TIME OF INCIDENT:** 1240 |

**4. BUILDING NAME:** Earle Cabell Federal Bldg & US Courthouse   **5. BUILDING ADDRESS:** 1100 Commerce, Dallas TX 75242

**6. WAS SUBJECT DETAINED?** ☐ Yes   ☒ No   **7. REPORTING DISTRICT:** NTX

**8. TYPE OF INCIDENT (Check applicable box):**

- ☐ Alarm Activation
- ☐ Assault & Battery (Including Attempts)
  - ☐ Completed
  - ☐ Attempted
- ☐ Bomb Threat
- ☐ Contraband
- ☐ Damage, Loss, & Vandalism
- ☐ Demonstration
- ☐ Disruptive Person
- ☐ Disturbance
- ☐ Hostage
- ☐ Illegal Weapon

- ☐ Judicial Facility/Protective Facility Escort Incident
- ☐ Malfunctioning Equipment
- ☐ Medical Emergency
- ☐ Missing Property
- ☐ Non-Compliance
- ☐ Physical Security Breach
  - ☐ Open/Unsecured Access Point
  - ☐ Forced Entry
  - ☐ Unauthorized Access
  - ☐ Burglary
  - ☐ Vehicle Break-In
  - ☐ None of the Above

- ☐ Suspicious Activity
  - ☐ Inappropriate Communications (Incl. Threats)
  - ☐ Suspicious Individuals
  - ☐ Suspicious Packages/Letters
  - ☐ Suspicious Vehicles
  - ☐ Unattended Packages
  - ☐ Unmanned Aerial Vehicles
- ☐ Use of Force
- ☐ Vehicle Break-Ins/Burglaries
- ☒ Other (Describe in Field #10)

**9. CHECK APPLICABLE BOX:**

☒ Initial Report   ☐ Follow-Up Report - Initial Report Dated: _____

**10. INCIDENT DESCRIPTION (Details should cover who, what, where, when and how):**

On Friday, September 24, 202, I CSO Donald Ray was assigned to Mag Court at 1300 hours with Judge Ramirez. At about 1240 hours I was advised by CRD Marie Gonzales that she had just had a verbal confrontation with Attorney David Finn over him wanting to bring in his client's family members into the courtroom. Marie stated she tried to tell Finn that no family members would be allowed in the courtroom and that there would not be any detention hearings today. Marie stated Finn would not listen to her and was acting as if he was high on some kind of drug or something. I told Marie that I would go to the mag stop the people from coming into the courtroom. As I approached the mag I saw Attorney Finn and two family members that had just cleared the check point. I stopped the family member and told them that they could not come into the courtroom, but could go to District Clerks Office on the 14th floor and listen to the proceedings. Attorney Finn started yelling "these are my witnesses and that they could come in." I told him that we were not having any detention hearings today and that no witnesses would be allowed in the courtroom per the judge. Finn started yelling that I didn't know who he was and that he use to be a judge and an US Attorney. When Finn would not listen to my instructions, I told him to leave the floor. Finn exited the mag area and stoud in the elevator lobby area. While was still standing in the mag area, Finn walked back through the walk through, at which time I stopped him. Finn got in my face and stated he was Irish and asked me if I saw

*I hereby certify that the information stated herein is true, complete, and accurate to the best of my knowledge.*

**Reporting CSO Name:** Donald Ray   **Reporting CSO ID #:** 19012

**Donald Ray**
Digitally signed by Donald Ray
DN: cn=Donald Ray, o=xx,
email=donald.ray@usdoj.security.com, c=US
Date: 2021.09.27 11:53:32 -05'00'
**Signature - Reporting CSO**          Sep 27, 2021          **Signature - USMS JSI / COR**
                                       **Date Submitted**                                          **Date Submitted**

Note: Completed forms containing personally identifiable information (PII) must be encrypted and include the appropriate marking (U/LES) in the SUBJECT line of the message prior to dissemination via email outside of USMS.
UNCLASSIFIED // LES
PAGE ___ OF ___          DISTRIBUTION: DISTRICT COR - 1 COPY / OCS - 1 COPY          Form CSO-003
Rev. 03/20

Exhibit I

DO NOT DISSEMINATE WITHOUT PERMISSION OF USMS

**Court Facility Incident Report** *(continued)*

**DATE OF REPORT:** 09/27/2021          **DATE OF INCIDENT:** 09/24/2021

**INCIDENT DESCRIPTION** *(Details should cover who, what, where, when and how)* **- CONTINUED:**

any fear in his eyes. He proceeded to tell me that he was not afraid of me. I told Finn that I was not afraid of him and that he needed to get out of my face and leave the floor. I also told Finn that he was an attorney and did not run anything in this building. I was later advised by CRD Gonzales to let Finn into the courtroom and to tell Judge Ramirez about his behavior. I would also like to let it be known that Finn had an oder of alcohol on his breath.

Note: Completed forms containing personally identifiable information (PII) must be encrypted and include the appropriate marking (U/LES) in the SUBJECT line of the message prior to dissemination via email outside of USMS.

UNCLASSIFIED // LES

PAGE ____ OF ____          *DISTRIBUTION:*  *DISTRICT COR - 1 COPY / OCS - 1 COPY*          Form CSO-003
Rev. 03/20

# EXHIBIT J



June 10, 2022

To Whom It May Concern:

This letter is to confirm that David Finn has completed an Intensive Outpatient Program (IOP) at Arise Recovery Centers. Mr. Finn admitted to our program on March 29, 2022 and has achieved successful completion of IOP as of June 9, 2022.

Through our program, Mr. Finn received group therapy three times per week (three hours per session), individual therapy one time a week (60 minutes per session), family therapy one time a month (60 minutes per session as needed), and case management one time a month (as needed).

At Arise Recovery Centers, sessions are facilitated by Texas State Licensed, Master's Level Clinicians specializing in the treatment of substance abuse and addiction. In group sessions, clients are given the opportunity to process events, emotions, and triggers in a safe environment with the support of the group facilitator and fellow peers. Clients are also taught new skills using evidence-based therapy approaches, including Dialectical Behavioral Therapy, Cognitive Behavioral Therapy, and the Twelve Steps. In weekly individual therapy sessions, clients meet with their individual therapist to evaluate personal goals, treatment goals, and are given an opportunity to examine causes and conditions of their addiction. Clients are also provided therapeutic assignments by their individual therapist designed to foster additional insight. Family and case management sessions are scheduled and managed monthly, as needed.

During his time enrolled in IOP, Mr. Finn demonstrated consistent and active engagement in all sessions/ program requirements while maintaining sobriety from alcohol as evidenced by weekly negative urine analysis (UA) screenings. Mr. Finn has completed recommended IOP treatment and has chosen to voluntarily enroll in continuation of care via Arise Recovery Center's Supportive Outpatient Program (SOP). SOP consists of group therapy twice weekly (three hours per session), individual therapy once weekly (60 minutes per session) and continued weekly UA testing. SOP is generally completed in to 8-10 weeks and a completely voluntary program in which to enroll. Mr. Finn is enrolled and beginning SOP services June 10, 2022.

Please do not hesitate to reach out with any additional questions.

Sincerely,

*Chelsea Petty, LMFT-Associate*

**Chelsea Petty, LMFT-Associate**
Therapist
Office: (888) REHAB-TX / Cell: (512) 710-7075 / Fax: (888) 339-2747
5440 Harvest Hill Rd, #230, Dallas, TX 75230
www.AriseRecoveryCenters.com
*Cypress – Dallas - Ft. Worth - McKinney - Southlake - Sugar Land – TCU – West Houston*

**Arise Recovery Centers**
Fort Worth/Southlake/Dallas/McKinney
Office: (888) DFW-ARISE / Fax: (888) 339-2747
www.AriseRecoveryCenters.com

Untitled attachment 00581.html

**Chelsea Petty, LMFT-Associate**

Therapist

Office: (888) REHAB-TX / Cell: (512) 710-7075 / Fax: (888) 339-2747

5440 Harvest Hill Rd, #230, Dallas, TX 75230

www.AriseRecoveryCenters.com

*Cypress b    Dallas - Ft. Worth - McKinney - Southlake - Sugar Land b    TCU b    West Houston*



ARISE
RECOVERY CENTERS

Certificate of Completion

THIS ACKNOWLEDGES THAT

David Finn

HAS COMPLETED THE ARISE RECOVERY CENTERS
INTENSIVE OUTPATIENT PROGRAM ON

JUNE 9, 2022

_Chelsea Petty, LMFT-Associate_

CHELSEA PETTY, LMFT-ASSOCIATE

June 10, 2022

DATE